IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| JACKIE L. MELTON<br>　　　Plaintiff, | )<br>)<br>) |
| v. | )    Civil No. 3:15cv404 (REP) |
| | ) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>　　　Defendant. | )<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

On May 16, 2012, Jackie Melton ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from degenerative disc disease, left foot plantar fasciitis, chronic obstructive pulmonary disease ("COPD"), emphysema, hypertension, hyperlipidemia and obesity with an alleged onset date of October 13, 2011. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ failed to give proper weight to the medical opinion of Plaintiff's treating physician, that the ALJ failed to account for any mental limitations in determining the residual functional capacity ("RFC") and that the ALJ failed to include these mental limitations in the concomitant hypothetical. (Mem. in Supp. of Pl.'s Mot. For Summ. J. ("Pl.'s Mem.")(ECF No.

13) at 4-9.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motions for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On May 16, 2012, Plaintiff filed applications for DIB and SSI, alleging disabilities with an alleged onset date of October 13, 2011. (R. at 19.) The SSA denied these claims initially on August 9, 2012, and again upon reconsideration, on March 20, 2013. (R. at 19.) At Plaintiff's written request, the ALJ held a hearing on June 30, 2014. (R. at 19.) On August 22, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because the claimant had the ability to perform her past relevant work as an appointment clerk. (R. at 23, 27.) On May 6, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla, but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination, or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20

C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On June 30, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a Vocational Expert (VE) testified. (R. at 37-71.) On August 22, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 19-28.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 20-21). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 13, 2011. (R. at 21.) At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, left foot plantar fasciitis, chronic obstructive pulmonary disease ("COPD"), emphysema, hypertension, hyperlipidemia and obesity. (R. at 21.) The ALJ found that Plaintiff did not have the severe impairments of gastroesophageal reflux disease ("GERD"), neuropathy and anxiety. (R. at 22.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with additional limitations. (R. at 23.) She could never climb ladders, ropes or scaffolds. (R. at 23.) Plaintiff could occasionally stoop, kneel, crouch, and crawl, and she could frequently balance.

4

(R. at 23.) Plaintiff could only occasionally climb ramps and stairs, and must avoid concentrated exposure to odors, dust, gases, fumes and poor ventilation. (R. at 23.)

At step four, the ALJ found Plaintiff could perform her past work as an appointment clerk. (R. at 27.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 27.)

## IV. ANALYSIS

Plaintiff, fifty-seven years old at the time of this Report and Recommendation, previously worked as an appointment setter. (R. at 75, 78.) She applied for Social Security Benefits, alleging disability from bulging and protruding discs in her back, COPD, asthma, emphysema, bronchitis, and GERD with an alleged onset date of October 13, 2011. (R. at 75-76.) Plaintiff's appeal to this Court alleges that the ALJ erred in failing to properly consider the medical opinion of Plaintiff's treating physician, in penalizing her for inability to afford medical treatment, in failing to account for any mental limitations in determining the RFC, and in failing to include those mental limitations in the concomitant hypothetical. (Pl.'s Mem. at 3-12.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ did not err in affording very little weight to Dr. Moore's medical opinion.

Plaintiff argues that the ALJ erred in assigning little weight to the opinion of Plaintiff's treating physician, William Moore, M.D., without providing sufficient reason for the assignment, and that the ALJ erroneously found the opinion inconsistent with other medical evidence in the record. (Pl.'s Mem. at 9-10.) Plaintiff also argues that Dr. Moore offers the only medical opinion of a treating or examining physician in the record, and that his opinion establishes that Plaintiff cannot work full-time. (Mem. in Supp. of Pl.'s Reply Br. ("Pl.'s Reply Br.") (ECF No. 16) at 1.) Defendant responds that the ALJ considered the medical source opinions in

accordance with the regulations. (Def.'s Mot. For Summ. J. ("Def.'s Mem.") (ECF No. 15) at 16.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's provided medical records, and any medical evidence resulting from consultative examinations or ordered medical expert evaluations. 20 C.F.R. §§ 404.1512(a)-(e), 404.1527, 416.912(a)-(e), 416.927. When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that support each other, the ALJ makes a determination based on that evidence. 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If, however, the medical opinions conflict internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (e), 416.927(c)(2)-(6), (e).

Under the applicable regulations and case law, the ALJ must give a treating source's opinion controlling weight if it enjoys support from medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant has a disability precluding him from employment (an issue reserved for the Commissioner), or when the treating source's opinion conflicts with other evidence or when the other evidence does not support it. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision as to what weight to afford a medical opinion absent some indication that the ALJ "dredged up specious inconsistences." *Dunn v. Colvin*, 607 Fed.Appx. 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). An ALJ's decision regarding the weight to afford to a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

The ALJ must consider the following factors when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). Importantly, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine the ultimate question of a claimant's disability as defined under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Here, the ALJ afforded Dr. Moore's August 28, 2013 opinion very little weight. (R. at 27.) Dr. Moore opined that Plaintiff could walk less than one city block without rest, sit continuously for two hours at a time, stand continuously for 30 minutes at a time, and sit, stand, or walk for a total of less than two hours during an eight-hour work day. (R. at 580.) The ALJ assigned this opinion very little weight based on the limited treatment relationship and the opinion's inconsistency with the objective medical evidence in the record. (R. at 27.) Substantial evidence supports the ALJ's decision.

Dr. Moore began treating Plaintiff in December, 2011. (R. at 486.) Dr. Moore treated her for COPD in February, 2012. (R. at 476.) Plaintiff saw Dr. Moore again in April, 2012 for

7

back pain, and in September, 2012 for hypertension, cholesterol, and foot pain. (R. at 464, 563.) According to the record, Dr. Moore did not treat Plaintiff between September 2012 and August 2013, when Dr. Moore completed the medical source statement at issue. (R. at 580.) Because of the limited nature of the treating relationship, as well as the gap in time between the last treatment and the opinion, the ALJ properly discounted Dr. Moore's opinion.

Substantial evidence in the form of Plaintiff's medical records also supports the ALJ's decision. On February 3, 2012, Dr. Moore conducted a physical exam of Plaintiff that revealed normal cardiovascular findings and a normal range of motion in her neck. (R. at 316.) Plaintiff had no respiratory distress and no wheezes. (R. at 316.) Dr. Moore noted that she appeared well-developed. (R. at 315.) On February 10, 2012, Dr. Moore made the same findings on a physical exam, adding that she had a normal musculoskeletal range of motion. (R. at 309, 470.)

On April 24, 2012, Plaintiff returned to Dr. Moore, complaining of back pain. (R. at 464.) On physical exam, Dr. Moore again noted normal cardiovascular findings, as well as normal effort and breath sounds. (R. at 464.) While she exhibited decreased range of motion and tenderness in her back, she had normal and symmetrical grips and normal deep tendon reflexes in her upper extremities. (R. at 465.) Dr. Moore diagnosed Plaintiff with cervical radiculitis, but prescribed only medication for treatment. (R. at 465.)

On May 4, 2012, Plaintiff visited Dennis L. Thomas, M.D., to have her disability paperwork completed. (R. at 512.) On physical exam, Dr. Thomas noted clear lungs to auscultation and normal respiratory effort. (R. at 514.) He noted that Plaintiff had a regular heart rate and rhythm with no murmurs, gallops or rubs. (R. at 514.)

A June 1, 2012 return visit to Dr. Thomas produced no new respiratory or musculoskeletal findings on physical exam. (R. at 517.) A review of her systems produced

8

negative results for both chest pain and back pain. (R. at 516.) Dr. Thomas also found her negative for chills, fatigue and fever. (R. at 516.)

On September 17, 2012, Plaintiff presented to Dr. Moore with foot pain. (R. at 561.) A physical exam revealed normal findings. (R. at 563.) Dr. Moore diagnosed her with plantar fasciitis, but only prescribed medication to treat it. (R. at 564.)

On November 6, 2013, Plaintiff presented to Tasha B. Dickerson, M.D., for arm pain and a refill of her medications. (R. at 590.) On physical exam, Dr. Dickerson noted normal respiratory and cardiovascular findings. (R. at 591.) She also noted a normal gait and station. (R. at 591.) On December 9, 2013, January 16, 2014, and February 17, 2014, Plaintiff returned to Dr. Dickerson, who made similarly normal findings. (R. at 643, 645, 646.)

Plaintiff's own statements also support the ALJ's decision. Plaintiff completed a function report on June 7, 2012. (R. at 269-77.) Therein, she indicated that she lived alone, cleaned her house, cooked her own meals and had no problems caring for herself. (R. at 269-70.) Without assistance, she could dust, wash dishes, vacuum, sweep and cut the grass with a riding mower. (R. at 270.) She drove by herself and went out alone. (R. at 272.) She could shop for her own groceries, pay bills, count change, handle a savings account and use a checkbook. (R. at 272.) She visited her mother and children without accompaniment. (R. at 273.) Plaintiff's ability to complete many tasks by herself supports the ALJ's decision.

In conclusion, the ALJ noted these inconsistencies between the record and Dr. Moore's opinion, providing sufficient reason for according very little weight to the opinion. Therefore, substantial evidence supports the ALJ's decision to discredit Dr. Moore's opinion, and the ALJ did not err.

## B. The ALJ properly accounted for mental limitations in determining the RFC.

Plaintiff argues that the ALJ erred by failing to account for "any mental limitations at all" in determining her RFC. (Pl.'s Mem. at 3.) Plaintiff alleges that the record establishes significant mental limitations on Plaintiff's ability to work, including limitations from anxiety and depression. (Pl.'s Mem. at 4.) Defendant responds that the ALJ properly excluded any mental limitations from the RFC. (Def.'s Mem. at 13.)

After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, an ALJ must first assess the nature and extent of the claimant's physical and mental limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). Generally, the claimant bears the responsibility to provide the evidence that the ALJ utilizes in making his RFC determination; however, before making a determination that a claimant does not qualify as disabled, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. § 404.1545(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that have basis in the claimant's credible complaints. 20 C.F.R. § 404.1545(e). The ALJ must conduct a function-by-function analysis in assessing a claimant's RFC, and remand may be appropriate in cases where the ALJ fails to assess a claimant's capacity to perform relevant functions, or where the ALJ's analysis contains inadequacies that frustrate meaningful review. *Mascio*, 780 F.3d at 635-36. The assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts and non-medical evidence, including daily activities and observations. SSR 96-8p.

10

In this case, the ALJ did not find that Plaintiff had any work-related mental limitations. (R. at 27.) Although the ALJ acknowledged that Plaintiff had received treatment for depression and an anxiety disorder from primary care sources, he found that the evidence did not reflect that those conditions had caused her more than mild limitations in activities of daily living, social functioning, concentration, persistence or pace. (R. at 22.) In making this determination, the ALJ considered the medical diagnoses from the multiple physicians in the record and the state agency psychologists' reports, along with Plaintiff's self-reported daily activities. (R. at 22, 27.) The ALJ accorded great weight to the state agency psychologists who determined that Plaintiff had no severe mental impairments. (R. at 27.) Substantial evidence supports the ALJ's decision.

Plaintiff's medical records support the ALJ's decision not to include any mental limitations in Plaintiff's RFC. On several occasions, Dr. Moore noted that Plaintiff exhibited a normal mood and affect along with normal behavior. (R. at 309, 316, 465, 471, 477.) Likewise, Dr. Thomas noted that Plaintiff demonstrated no focal weakness, sensory loss, parasthesias or loss of consciousness. (R. at 519, 525, 530, 533, 536, 539.) Importantly, Dr. Thomas also indicated that Plaintiff exhibited no emotional or psychiatric problems. (R. at 519, 525, 530, 533, 536, 539.)

The findings of the state agency psychologists also support the ALJ's determination that Plaintiff had no severe mental impairments. On August 9, 2012, Richard Luck, Ph.D., found that Plaintiff had non-severe anxiety disorders that resulted in only mild limitations. (R. at 81, 93.) Likewise, on March 15, 2013, Richard J. Milan, Ph.D., determined that Plaintiff had a non-severe anxiety disorder that caused her no restrictions in daily living activities and only mild difficulties in maintaining social functioning or concentration, persistence and pace. (R. at 105-

06.) Dr. Milan noted the lack of specialized mental health treatment in finding Plaintiff's mental impairments non-severe. (R. at 106.)

Plaintiff's self-reported activities support the ALJ's determination that she had no work-preclusive mental limitations. In her function report, Plaintiff reported her ability to live independently and care for herself. (R. at 269-75.) Plaintiff reported that she could pay attention as long as necessary and could follow both written and spoken instructions very well. (R. at 274.) She also reported getting along with authority figures very well, along with the ability to handle stress and changes in routine. (R. at 275.) She reported engaging in social activities and having no problems getting along with others. (R. at 273-74.) These activities support the ALJ's determination that Plaintiff did not suffer from severe mental limitations.

Plaintiff's collection of unemployment benefits and job-seeking activities also support the ALJ's decision. To collect unemployment benefits in Virginia, an unemployed individual must have the ability and availability to work. Va. Code. Ann. § 60.2-612(7). Plaintiff collected unemployment benefits during the first three quarters of 2012, after her alleged onset date. (R. at 42, 236.) Furthermore, Plaintiff admitted to searching for jobs during this time period. (R. at 42.) Both of these activities carry with them the representation that Plaintiff had the capacity to work, diminishing her credibility when she alleged that she had work-preclusive limitations.

Because substantial evidence supports the ALJ's finding that Plaintiff had no severe mental impairments, the ALJ did not err in assessing Plaintiff's mental RFC.

### C. The ALJ did not err by not ordering a consultative exam.

Plaintiff argues that the ALJ failed to consider that her break in treatment with Dr. Moore resulted from a loss of insurance and inability to otherwise afford treatment, thereby improperly penalizing her for her inability to afford medical care. (Pl.'s Mem. at 10.) Instead, according to

Plaintiff, the ALJ should have arranged for a consultative examination. (Pl.'s Mem. at 12.) Defendant responds that this case did not warrant a consultative examination. (Def.'s Mem. at 19.)

A limited treatment relationship may inform the assessment of a physician's opinion without also factoring into the assessment of the severity of a claimant's impairment. In determining that a claimant does not have a severe impairment, the ALJ may not consider the claimant's failure to seek treatment that results from her inability to afford it. *Lovejoy v. Heckler*, 790 F. 2d 1114, 1117 (4th Cir. 1986) ("A claimant may not be penalized for failing to seek treatment she cannot afford."). However, the ALJ must consider the nature and extent of the treatment relationship when evaluating a treating source's opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Plaintiff in this case ignores the distinction between the ALJ's two assessments in arguing that the ALJ improperly penalized Plaintiff for her inability to afford further treatment. (Pl.'s Mem. at 10-11.) The ALJ did not consider Plaintiff's limited treatment relationship with Dr. Moore when he assessed the severity of Plaintiff's conditions. (R. at 21-22.) Rather, the ALJ considered the limited treatment relationship when he assessed the weight that Dr. Moore's opinion deserved. (R. at 27.) Before deciding how much weight to assign Dr. Moore's opinion, the ALJ thoroughly reviewed Plaintiff's treatment records. (R. at 24-26.) Then, the ALJ explained that those records conflicted with Dr. Moore's opinion, so he assigned that opinion little weight. (R. at 27.) The ALJ detailed the objective medical findings that conflicted with Dr. Moore's opinion. (R. at 27.) Specifically, the records reflected that Plaintiff exhibited no neck tenderness, no lower extremity weakness, normal grip strength, no chest pain to palpitation, a normal respiratory effort, lungs clear to auscultation, no wheezing or rales, a normal heart rate

and rhythm, no cardiac murmur intact pulses, intact deep tendon reflexes, and a normal gait and station. (R. at 27.) Only after finding that Dr. Moore's opinion conflicted with the evidence in the record did the ALJ note that the limited treatment relationship provided secondary support for his decision to discredit Dr. Moore. (R. at 27.) Moreover, the ALJ based his decision on what the record included (*i.e.*, the objective treatment records, Plaintiff's statements), rather than what the record lacked. (R. at 27.) Therefore, the ALJ did not penalize Plaintiff for her inability to afford medical treatment.

Misconstruing the decision as one based on what the record lacked, Plaintiff also argues that the ALJ should have ordered a consultative exam. (Pl.'s Mem. at 12.) If an ALJ finds the record lacks sufficient evidence to determine whether a claimant qualifies as disabled, the ALJ can attempt to resolve the insufficiency by seeking additional evidence from past treatment sources, requesting additional records, or asking a claimant to undergo a consultative examination, with expenses paid. 20 C.F.R. § 404.1520b(c).

Here, the ALJ did not order additional consultative examinations; however, the record did not require him to do so. Although the ALJ considered the limited treatment relationship between Plaintiff and Dr. Moore, the ALJ considered other evidence in the record from Dr. Moore, and from other physicians, including state agency psychologists. (R. at 24-27.) The ALJ also considered the medical treatment that Plaintiff received after her break in treatment with Dr. Moore. (R. at 24-26.) Additionally, the ALJ relied on Plaintiff's own statements in reaching his decision. (R. at 26.) The substantial evidence that supports the ALJ's decision to discredit Dr. Moore's opinion, as detailed above, also supports the ALJ's decision not to order a consultative exam. Because numerous other sources of evidence in the medical record support the ALJ's decision, the ALJ did not err in failing to order a consultative exam.

14

### D. The ALJ did not fail to include documented functional limitations in the concomitant hypothetical.

Plaintiff argues that the ALJ erred in failing to include all of Plaintiff's documented functional limitations in the hypothetical posed to the VE. (Pl.'s Mem. at 4.) Defendant responds that the ALJ properly included all of Plaintiff's limitations in the RFC. (Def.'s Mem. at 13.)

At the fourth step of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant can perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing Plaintiff's ability to perform her past relevant work, the Commissioner may rely on the general job categories of the Dictionary of Occupational Titles ("DOT") as presumptively descriptive of a claimant's prior work. *See* SSR 82-61 ("The Dictionary of Occupational Titles descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is usually performed in the national economy.") Additionally, the ALJ may use the services of a VE to determine the demands of Plaintiff's past work and whether her RFC allows her to perform such work. 20 C.F.R. § 416.960(b)(2). During an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* at 50.

In response to the ALJ's questioning, the VE testified that she had read Plaintiff's file and listened to her testimony before the ALJ. (R. at 68.) The ALJ asked the VE to consider a hypothetical individual limited to performing light work, who could not climb ropes, ladders or scaffolds, but could climb ramps and stairs occasionally. (R. at 23, 69.) This hypothetical individual could occasionally stoop, kneel, crouch and crawl, and she could frequently balance.

15

(R. at 23, 69.) The ALJ further limited the hypothetical individual to the need to avoid concentrated exposure to odors, dusts, gases, fumes and poor ventilation. (R. at 23, 69.) The VE testified that the hypothetical individual could perform Plaintiff's past position of an appointment clerk position. (R. at 69-70.) The ALJ then further limited the hypothetical individual to sedentary work, and the VE testified that the individual could still perform the claimant's past work as an appointment clerk. (R. at 69.) When the ALJ next limited the hypothetical individual to needing to change positions every 15 to 30 minutes between sitting and standing, the VE again testified that she could perform her past relevant work. (R. at 69-70.)

The ALJ found that Plaintiff's anxiety did not result in work-related mental limitations. (R. at 22, 27.) As discussed above, substantial evidence supports the RFC. Therefore, the ALJ properly questioned the VE based upon a hypothetical individual without work-related mental limitations.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure**

shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

                                          /s/
                                    David J. Novak
                                    United States Magistrate Judge

Richmond, Virginia
Date: June 1, 2016

shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

                                  /s/
                              David J. Novak
                              United States Magistrate Judge

Richmond, Virginia
Date: June 1, 2016